■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOEL HERNANDEZ, Also Known as HAZE, Appellant. [931 NYS2d 780]—

Spain, J.

Defendant was convicted, following a jury trial, of various crimes stemming from a shootout that occurred in August 2007 in the City of Schenectady, Schenectady County, allegedly between himself, codefendant Charles Ardrey and Diondrea McCaskill, the paramour of Ardrey's ex-girlfriend, during which two innocent bystanders were injured. Defendant thereafter was sentenced as a second felony offender to an aggregate term of 30 years in prison with five years of postrelease supervision. On defendant's appeal, we now affirm.

Initially, County Court did not, as asserted by defendant, commit reversible error in its *Molineux* ruling. Prior to trial, the People sought to introduce evidence of a January 2007 Vermont drug conviction, based on guilty pleas made by defendant and Ardrey to possessing 27 small packages of crack cocaine with the intent to sell, which were physically retrieved from Ardrey's body. Here, following the August 2007 shooting, Ardrey was again found in possession of crack cocaine, leading to several drug-related crimes for which defendant was also indicted, but not convicted. The People argued that the 2007 conviction was probative of defendant's intent to act in concert with Ardrey to constructively possess and sell the cocaine; they also sought to introduce evidence of defendant's alleged gang affiliation and other prior drug dealing and gun possession charges as additional evidence of intent and motive.

Where, as here, there is a proper nonpropensity purpose to the admission of prior bad acts, namely, defendant's intent to possess and sell cocaine recovered from Ardrey, "the decision whether to admit [such] evidence . . . rests upon the trial court's discretionary balancing of probative value and unfair prejudice" (*People v Barreto*, 64 AD3d 1046, 1049 [2009], *lv denied* 13 NY3d 834 [2009] [internal quotation marks and citations omitted]). Our review of the record reveals that County Court balanced the prejudice to defendant against the probative value of the proffered evidence, and ultimately permitted the introduction of the Vermont drug-related conviction as relevant to the People's theory of the case that defendant and Ardrey were accomplices in the newly charged drug-related crimes, but denied the People's request to introduce evidence of gang affiliation and the other prior charges. Under these circumstances, we reject defendant's contention that County Court failed to engage in a proper *Molineux* analysis or otherwise abused its discretion (*see People v Alvino*, 71 NY2d 233, 242 [1987]; *People v Barreto*, 64 AD3d at 1049; *People v Echavarria*, 53 AD3d 859, 863 [2008], *lv denied* 11 NY3d 832 [2008]).

Defendant also argues that the jury's finding that he possessed and fired a weapon was against the weight of the evidence because none of the People's witnesses testified to actually seeing him hold and fire a weapon during the shootout. We disagree, based on the strong circumstantial evidence supporting the jury's findings. Testimony from witnesses established that defendant was in possession of a handgun the day prior to the incident, which he purchased in Rutland, Vermont and brought to Schenectady, and that defendant and Ardrey had each armed themselves with handguns at a Schenectady apart-

ment shortly before the shooting. A female acquaintance of defendant testified that she drove defendant and Ardrey from that apartment around Schenectady until they spotted McCaskill and exited the vehicle, whereupon McCaskill pulled out a handgun and began firing at them. Although she could not see his hand, she observed defendant with his back toward her and his right arm extended at an approximate 90-degree angle while gunshots sounded around them.

According to defendant's female acquaintance, after defendant—sporting a gunshot wound to the arm—and Ardrey got back in her car, defendant handed a gun to Ardrey, who had discarded his own weapon prior to getting back in the car. When the car was then stopped by police, Ardrey ran from the vehicle, throwing the handgun to the ground, where it was recovered. She then drove defendant back to the apartment as the police pursued Ardrey. At the apartment, defendant told another friend that McCaskill had started shooting at him and that he had returned fire. At the scene of the shootout, the police recovered expended shell casings from three different handguns, and a test conducted by the State Police revealed that a casing found at the crime scene had been fired by the gun discarded by Ardrey and recovered by police. According appropriate deference to the jury's credibility determinations (see People v Romero, 7 NY3d 633, 645 [2006]) and considering the evidence in a neutral light along with the reasonable inferences that can be drawn therefrom, we conclude that the jury's finding that defendant was in possession of a handgun that he fired at McCaskill is supported by the weight of the credible evidence (see Penal Law §§ 110.00, 120.10 [1]; § 120.05 [2]; § 120.25; § 265.03 [1], [3]; People v Bleakley, 69 NY2d 490, 495 [1987]; People v Malcolm, 74 AD3d 1483, 1485-1486 [2010], lv denied 15 NY3d 954 [2010]; People v Stewart, 68 AD3d 1438, 1439-1440 [2009], lv denied 14 NY3d 773 [2010]).

Defendant failed to preserve his argument that he was deprived of a fair trial when—at trial—County Court allowed the People, and for that matter, defense counsel, to use his nickname "Haze" and occasionally other parties' nicknames (see CPL 470.05 [2]). In any event, given that defendant's nickname is not inherently prejudicial in nature, that his nickname was probative of his identity as he was known and identified by many of the witnesses by that name, and that County Court instructed the jury that it could not consider his nickname as any evidence of guilt to the crimes charged, we conclude that the use of defendant's nickname did not deprive him of a fair trial (see People v Hoffler, 41 AD3d 891, 892-893

[2007], *lv denied* 9 NY3d 962 [2007]; *People v Crowder*, 2 AD3d 454, 455 [2003], *lv denied* 2 NY3d 739 [2004]; *cf. People v Bellamy*, 26 AD3d 638, 640-641 [2006]; *People v Lauderdale*, 295 AD2d 539, 540 [2002]).

Likewise, we reject defendant's remaining contentions, finding that he was not prejudiced by the prosecutor's reference during summation to defendant in the context of Ardrey's statement to police (*see Bruton v United States*, 391 US 123 [1968]). The prosecutor properly referred only to Ardrey's redacted statement, and his use of the statement to draw inferences about defendant's participation in the crime by linking it to other trial evidence was permissible (*see People v Pagan*, 87 AD3d 1181, 1183-1185 [2011]). Nor do we find any basis to justify a reduction in his sentence, which was within the statutory guidelines (*see* Penal Law § 70.06 [3] [b]; [6] [a]), given the brazen nature of defendant's crimes and his lengthy criminal history (*see* CPL 470.15 [6] [b]; *People v Sudler*, 75 AD3d 901, 906 [2010], *lv denied* 15 NY3d 956 [2010]; *People v Davis*, 4 AD3d 567, 568 [2004], *lv denied* 2 NY3d 798 [2004]).

Peters, J.P., Lahtinen, Stein and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.